UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| DOMINIQUE WALLACE, | ) |
| Movant, | ) |
| | ) No. 3:19-cv-01122 |
| v. | ) Judge Trauger |
| | ) |
| UNITED STATES OF AMERICA, | ) |
| Respondent. | ) |

**MEMORANDUM**

Pending before the court is pro se movant Dominique Wallace's motion under 28 U.S.C. § 2255 to vacate, set aside, or correct a sentence previously imposed by this court. (Doc. No. 1). The government filed a response to the motion, urging that none of Wallace's claims present a valid basis for post-conviction relief. (Doc. No. 11). For the following reasons, Wallace's motion will be denied, and this action will be dismissed.

**I.    Background**

On the night of June 3, 2015, Metropolitan Nashville Police Department (MNPD) Officers responded to an attempted robbery at the Express Market located at 2408 Antioch Pike, Antioch, Tennessee. (Case 3:15-cr-140, Crim. Doc. No. 225 at PageID# 600). The Express Market's surveillance cameras, which captured the incident, showed three armed, masked people enter the market. (*Id.*) As the investigation later revealed, those people were Dominique Cordell Wallace (aka "Deuce Face") and two of his associates: Demontay Thomas and Robert Dewayne Brooks. (*Id.*) A fourth individual, Michael Bright, was waiting outside as a getaway driver. (*Id.*) Once inside the store, Brooks grabbed a store clerk and forced him at gunpoint toward the counter. (*Id.*) The store owner was standing behind the counter, which was separated from the rest of the store

1

by a plexiglass wall. (*Id.*) The suspects held the owner and clerk at gunpoint while demanding money. (*Id.*)

Thomas then began to crawl under the counter to gain access to the cash register. (*Id.* at PageID# 600). As he was doing so, Brooks sought access to the cash register by crawling through a hole in the plexiglass wall. (*Id.*) Brooks had not seen Thomas crawl under the counter and was startled when he suddenly saw Thomas below him. (*Id.*) Brooks then began firing his pistol (which had an extended magazine) in Thomas's direction, ultimately shooting him. (*Id.*) Thomas managed to get up after he was shot and made it to the entrance of the market before falling to the ground. He later was pronounced dead at the scene. (*Id.*)

After Thomas was shot, Brooks and Wallace began to flee the store. (*Id.* at PageID# 601). As they did, Brooks grabbed the store clerk and forced him to accompany them before shoving him to the ground near the store exit. (*Id.*) Once the clerk was on the ground, Wallace shot him in the head. (*Id.*) The clerk was later transported to Vanderbilt Medical Center for treatment. (*Id.*) He ultimately survived, despite sustaining serious injuries. (*Id.*)

Meanwhile, Wallace and Brooks got into Bright's vehicle and fled the scene without obtaining any of the money sought in the robbery. (*Id.*) Wallace then tried to dispose of the gun he had used to shoot the store clerk. (*Id.* at PageID# 601). Wallace gave the gun to Bright, who in turn gave it to his girlfriend (who also owned the getaway car), who later sold it to a friend. (*Id.*) After the gun was later recovered, police used ballistics analysis to connect it to casings found at the Express Market. (*Id.* at PageID# 601).

On December 9, 2015, Wallace, Brooks, and Bright were charged in a multi-count superseding indictment. (*Id.*, Doc. No. 27). Specifically, Wallace was charged with one count of conspiracy to commit robbery affecting commerce and one count of attempted robbery affecting

2

commerce (commonly referred to as conspiracy and attempt to commit Hobbs Act robbery), in violation of 18 U.S.C § 1951; two counts related to possession of a firearm or ammunition by a convicted felon, in violation of 18 U.S.C. § 922(g)(1); and one count of using and discharging a firearm in relation to a crime of violence, resulting in the murder of Damontay Thomas, in violation of 18 U.S.C. § 924(j). (*Id.*) On July 7, 2017, Wallace pleaded guilty to all counts without a plea agreement. (*Id.*, Doc. Nos. 108 and 109).

Wallace also was charged in a separate case with a single count of possessing a firearm as a convicted felon. (Case No. 3:15-cr-00098, Doc. No. 11). Wallace pleaded guilty in that case without a plea agreement, and the two cases were consolidated for purposes of sentencing. The firearm charge stemmed from an incident on June 10, 2015—one week after the Express Market shooting—wherein Wallace was found with a loaded 9mm pistol. (*Id.*, Doc. No. 225 at PageID# 599-600). Wallace had just been convicted in Davidson County Criminal Court on May 7, 2015, of attempted second-degree murder, a class B felony. The facts of that case reveal that, in April of 2012, Wallace, at age seventeen, along with an accomplice, engaged in the robbery of another wherein he shot the victim multiple times, resulting in life threatening injuries to that victim. Wallace was transferred to adult court where he ultimately pleaded guilty to attempted second degree murder, for which he received a split sentence and was placed on probation for 10 years. (*Id.*, Doc. No. 225 at PageID# 610).

Following Wallace's guilty plea, the Probation Office prepared a presentence report that calculated a combined advisory guideline range of 360 months to life imprisonment. (*Id.*, Doc. No. 225 at PageID# 619). The key legal question at issue at sentencing was whether Wallace's conviction under Section 924(j) incorporated the penalty provisions of 18 U.S.C. Section 924(c)— that is, whether the 924(j) count carried a ten-year mandatory minimum and must be consecutive

to all other counts, or instead had no mandatory minimum and could be concurrent with all other counts. Although the Probation Office concluded that the sentence on the Section 924(j) count had no mandatory minimum and could be concurrent, it ultimately recommended a total sentence of 420 months, including 420 months on the Section 924(j) count alone. (*Id*.)

The government objected to the Probation Office's determination that the penalty for violating Section 924(j) was zero years up to life imprisonment, with no consecutive sentencing required. (*Id*., Doc. No. 216 at PageID# 544-47). The government argued that the penalty range should reflect a mandatory minimum sentence of 10 years and a maximum sentence of life imprisonment consecutive to any other sentence because Section 924(j) necessarily incorporates the penalties associated with Section 924(c). (*Id*. at PageID# 544-47). The government also filed a sentencing memorandum seeking a guideline sentence of forty years' imprisonment. (*Id*., Doc. No. 218 at PageID# 548-51).

At the sentencing hearing, the court heard evidence from the government in the form of video surveillance of the attempted robbery and shooting and the testimony of the shooting victim who had sustained permanent and life-threatening injury from the shooting perpetrated by Wallace. Wallace also presented evidence in the form of testimony from a former teacher/coach and a social worker principally regarding his childhood, environmental, and personal circumstances. Following testimony and argument, the court sentenced Wallace to 30 years of imprisonment, which the court structured as follows: 20 years on the Hobbs Act robbery counts and 10 years on the felon-in-possession counts, with those sentences running concurrently, followed by 10 years on the Section 924(j) count. (*Id*., Doc. No. 232 at PageID# 805-06; Doc. No. 222 at PageID# 567-69). The court also imposed a 10-year concurrent sentence on the sole count in Case No. 3:15-cr-00098. (Case No. 3:15-cr-98, Doc. No. 89 at PageID# 203). Wallace's sentence was ordered to run consecutively

to any pending state sentence. (*Id.*, Doc. No. 222 at PageID# 569). Neither Wallace nor the government objected to the sentence imposed. (*Id.*, Doc. No. 232 at PageID# 809).

Wallace filed an appeal, arguing that the district court erred when it sentenced him to a consecutive term of imprisonment under § 924(j). *United States v. Wallace*, 772 F. App'x 320 (6th Cir. 2019). In affirming the court's judgment, the Sixth Circuit noted that circuits are divided as to whether a sentence imposed under § 924(j) must run consecutively to any other sentence; however, the Court did not need to resolve the question in Wallace's case because "the record ma[de] clear that the district court 'would have imposed the same sentence' regardless of its purported error." *Id.* at 321 (quoting *Williams v. United States*, 503 U.S. 193, 203 (1992)).

Wallace filed the instant § 2255 motion on December 16, 2019. (Doc. No. 1). In his § 2255 motion, Bradley attacks his conviction and sentence on two grounds. First, he challenges his conviction in Case 3:15-cr-98 for being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924. Wallace contends, based on the Supreme Court's decision in *Rehaif v. United States*, __ U.S. __, 139 S. Ct. 2191 (2019), that he did not know, and the government did not prove he knew, that he was prohibited from possessing a firearm; these failures, according to Wallace, render his plea and conviction invalid. Second, Wallace challenges his conviction in Case 3:15-cr-140 for using and discharging a firearm in relation to a crime of violence, resulting in murder, in violation of 18 U.S.C. § 924(j). Wallace contends, based on *United States v. Davis*, __ U.S. __, 139 S. Ct. 2319 (2019), that the predicate offense of conspiracy to commit robbery affecting commerce is not a crime of violence, rendering invalid his conviction for the Section 924(j) violation. The government filed a response to the motion, urging that none of Wallace's claims present a valid basis for post-conviction relief. (Doc. No. 11).

## II. Applicable Law

A prisoner in custody under a sentence of a federal court may move the court to vacate, set aside, or correct his sentence on certain grounds, including that "the sentence was imposed in violation of the Constitution or laws of the United States." 28 U.S.C. § 2255(a). It is well established that "[t]o prevail under § 2255, a defendant must demonstrate the existence of an error of constitutional magnitude which had a substantial and injurious effect or influence on the guilty plea or jury's verdict," or "must show a fundamental defect in his sentencing which necessarily results in a complete miscarriage of justice or an egregious error violative of due process." *Wright v. Jones*, 182 F.3d 458, 463 (6th Cir. 1999) (internal quotation marks omitted). In § 2255 proceedings, it is the petitioner's burden to show his entitlement to relief. *See Potter v. United States*, 887 F.3d 785, 787-88 (6th Cir. 2018).

In ruling on a motion made pursuant to § 2255, the court must determine whether an evidentiary hearing is necessary. "An evidentiary hearing is required unless the record conclusively shows that the petitioner is entitled to no relief." *Martin v. United States*, 889 F.3d 827, 832 (6th Cir. 2018) (quoting *Campbell v. United States*, 686 F.3d 353, 357 (6th Cir. 2012)); *see also* 28 U.S.C. § 2255(b). "Bald assertions and conclusory allegations" do not provide grounds to warrant requiring the government to respond to discovery or to require an evidentiary hearing. *Thomas v. United States*, 849 F.3d 669, 681 (6th Cir. 2017).

## III. Analysis

### A. *Rehaif* Claim

First, Wallace contends that, under *Rehaif*, he is actually innocent of his conviction in Case 3:15-cr-98 for being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and

924.[1] He claims that he did not know that he was a felon at the time of his offense or that his status placed him in a category of persons prohibited from possessing firearms. He additionally claims that the additional knowledge-of-status element was not read to him during his sentencing. (Doc. No. 1).

In *Rehaif*, the Supreme Court held that "in a prosecution under 18 U.S.C. § 922(g) and § 924(a)(2), the Government must prove both that the defendant knew he possessed a firearm and that he knew he belonged to the relevant category of persons barred from possessing a firearm." 139 S. Ct. at 2200. However, *Rehaif* did not announce a new rule of constitutional law made retroactive to cases on collateral review.

The Eleventh Circuit specifically has held that the Supreme Court has not made the *Rehaif* decision retroactively applicable to cases on collateral review. *See In re Palacios*, 931 F.3d 1314, 1315 (11th Cir. 2019). In *Khamisi-El v. United States*, 2020 WL 398520 (6th Cir. Jan. 23, 2020),[2] the Sixth Court found that "[t]he rule in *Rehaif* is a matter of statutory interpretation, not a 'new rule of constitutional law.'" *Id*. at *4 (quoting *In re Palacios*, 931 F.3d at 1315). Thus, Wallace's claim has no merit as *Rehaif* does not provide him relief in this collateral proceeding. *See Abernathy v. United States*, No. 1:19-cv-2, 1:16-cr-81, 2019 WL 5268546, at *5 n.3 (E.D. Tenn.

---

[1] Wallace also pleaded guilty to possession of a firearm and possession of ammunition as a convicted felon in Case 3:15-cr-140, but he does not challenge those convictions in his § 2255 motion.

[2] On appeal from the denial of Khamisi-El's motion to vacate sentence under 28 U.S.C. § 2255, the Sixth Circuit Court of Appeals affirmed the court's denial of relief under *Johnson v. United States*, __ U.S. __, 135 S. Ct. 2551 (2015). But Khamisi-El also asserted that his case should be remanded to allow him to amend his § 2255 motion by adding a claim based on *Rehaif*. The Sixth Circuit first found that, because Khamisi-El raised this claim for the first time on appeal, such an amendment would constitute a second or successive motion for post-conviction relief under § 2255. To allow such an amendment, the Court explained, it must contain (1) newly discovered evidence that, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that no reasonable factfinder would have found the movant guilty of the offense; or (2) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable. In considering whether *Rehaif* constituted the latter, the Court held that "[t]he rule in *Rehaif* is a matter of statutory interpretation, not a 'new rule of constitutional law.'" *Id*. at * 4 (quoting *In re Palacios*, 931 F.3d at1315). In denying Khamisi-El's request to amend his motion to add a claim based on *Rehaif*, the Sixth Circuit also found that *Rehaif*'s change in statutory interpretation cannot be considered "newly considered evidence."

Oct. 17, 2019) ("The Supreme Court's holding [in *Rehaif*], however, is not retroactively applicable to cases on collateral review and, therefore has no bearing on the Court's consideration of Petitioner's motion."); *Moore v. United States*, No. 2:19-cv-02572-TLP-tmp, 2019 WL 4394755, at * 2 (W.D. Tenn. Sept. 12, 2019) (denying relief under § 2255 because "*Rehaif* did not announce a new rule of law made retroactive to cases on collateral review"); *see also United States v. Damien Clark*, No. 6:20-cv-076-DCR, 2020 WL 1644022, at **3-4 (E.D. Ky. Apr. 4, 2020) (where petitioner challenged the validity of his conviction by way of 28 U.S.C. § 2241, finding that petitioner could not rely upon the "savings clause" of § 2255(e) to pursue his claims in a § 2241 petition but, even if this were not the case, Clark's reliance on *Rehaif* was misplaced because the Supreme Court has not made the *Rehaif* decision retroactively applicable to cases on collateral review.") (citing *In re Palacios*, 931 F.3d at 1315).

In addition, Wallace waived his ability to attack the sufficiency of the evidence to sustain his conviction by pleading guilty. *See United States v. Manni*, 810 F.2d 80, 84 (6th Cir. 1987) ("an attack on the sufficiency of the evidence that might have been produced at trial [is] clearly waived by [a] defendant's guilty plea."). Thus, the government was not required to prove anything with respect to Wallace's conduct because he admitted all of the facts essential to sustain his conviction when he agreed to plead guilty. *See United States v. Broce*, 488 U.S. 563, 569 (1989) ("A plea of guilty and the ensuing conviction comprehend all of the factual and legal elements necessary to sustain a binding, final judgment of guilt and a lawful sentence."); *see also Menna v. New York*, 423 U.S. 61, 62 n.2 (1975) ("[A] counseled plea of guilty is an admission of factual guilt so reliable that, where voluntary and intelligent, it quite validly removes the issue of factual guilt from the case."); *Boykin v. Alabama*, 395 U.S. 238, 242 (1969). Wallace was repeatedly advised of the consequences of his plea, including the waiver of his right to a trial, and proceeded to plead guilty

notwithstanding these consequences. Thus, he cannot now complain that the United States failed to prove the facts necessary to sustain his conviction. This claim will be dismissed.

**B.** *Davis* **Claim**

Second, Wallace challenges his conviction in Case 3:15-cr-140 for using and discharging a firearm in relation to a crime of violence, resulting in murder, in violation of 18 U.S.C. § 924(j). Relying on *Davis,* Wallace contends that the predicate offense of conspiracy to commit robbery affecting commerce is not a crime of violence, rendering invalid his conviction for the § 924(j) violation.

Wallace was charged in Count Three of the superseding indictment with using and discharging a firearm in relation to a crime of violence, resulting in murder, in violation of 18 U.S.C. § 924(j). The language of that count read as follows:

> On or about June 3, 2015, in the Middle District of Tennessee, Dominique Cordell Wallace, Robert Dewayne Brooks, and Michael Bright did knowingly use, carry, brandish and discharge firearms during and in relation to a crime of violence, to wit: conspiracy to commit robbery affecting commerce and attempted robbery affecting commerce, both in violation of Title 18, United States Code, Sections 1951and 2, and in so doing the defendants, Dominique Cordell Wallace, Robert Dewayne Brooks, and Michael Bright did commit the murder of Damontay L. Thomas, as defined in 18 U.S.C. Section 1111, through the use of a firearm, all in violation of Title 18 United States Code, Sections 924(c)(1)(A), 924(j), and 2.

(Case 3:15-cr-140, Doc. No. 27). The count included two underlying crimes of violence – conspiracy to commit robbery, the subject of Count One, and attempted robbery, the subject of Count Two.

For the purposes of § 924(c), and by extension § 924(j), the term "crime of violence" means an offense that is a felony and:

> (A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or

> (B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

*Id*. The statute's two sections are known as the "elements clause," § 924(c)(3)(A), and the "residual clause," § 924(c)(3)(B). The Supreme Court in *Davis* held that § 924(c)(3)(B)'s residual clause is unconstitutionally vague. *Id*. at 2324–25, 2336. It is this decision upon which Wallace bases his second claim.

As a result of *Davis*, conspiracy to commit robbery affecting commerce is no longer viable as a qualifying crime of violence for purposes of § 924(c)(3). *See United States v. Ledbetter,* 929 F.3d 338, 361 (6th Cir. 2019), *cert. denied*, 140 S. Ct. 509 (U.S. Nov. 12, 2019); *United States v. Nixon*, No. 1:18-cr-10042-JDB-1, 2020 WL 963383, at *2 (W.D. Tenn. Feb. 27, 2020) (quoting *Ledbetter* and finding no qualifying predicate offense to support the count seven § 924(c) conviction); *Baugh v. United States*, No. 3:16-cv-02628, 2010 WL 409728, at *4 (M.D. Tenn. Jan. 24, 2000) ("Baugh's conviction for conspiracy to commit Hobbs Act robbery does not qualify as a crime of violence under the elements clause of section 924(c)(3)(A), and it cannot qualify under the now invalidated residual clause of section 924(c)(3)(B).").

However, the crime of robbery affecting commerce still qualifies as a crime of violence under the elements clause of § 924(c)(3)(A). *United States v. Gooch*, 850 F.3d 285, 292 (6th Cir. 2017), *cert. denied*, 137 S. Ct. 2230 (June 5, 2017) (holding that Hobbs Act robbery is a crime of violence under § 924(c)'s use-of-force clause); *see also United States v. Camp*, 903 F.3d 594, 597 (6th Cir. 2018) (relying on *Gooch* and finding Hobbs Act robbery to be a crime of violence under the elements clause of Section 924(c)(3)(A) and supporting conviction for carrying a firearm during a crime of violence).

To the extent that Wallace argues his predicate crime of violence was attempted robbery rather than a completed robbery, and attempted robbery does not qualify, the Sixth Circuit has not

10

addressed this issue.[3]  However, other courts that have considered the question have found that, when a substantive offense is a crime of violence under 18 U.S.C. § 924(c)(3)(A), an attempt to commit that offense is also a crime of violence.  Agreeing with the Eleventh Circuit, the Ninth Circuit explained:

> We agree with the Eleventh Circuit that attempted Hobbs Act armed robbery is a crime of violence for purposes of § 924(c) because its commission requires proof of both the specific intent to complete a crime of violence, and a substantial step actually (not theoretically) taken toward its completion. *St. Hubert*, 909 F.3d at 351. It does not matter that the substantial step—be it donning gloves and a mask before walking into a bank with a gun, or buying legal chemicals with which to make a bomb—is not itself a violent act or even a crime. What matters is that the defendant specifically intended to commit a crime of violence and took a substantial step toward committing it. The definition of "crime of violence" in § 924(c)(3)(A) explicitly includes not just completed crimes, but those felonies that have the "attempted use" of physical force as an element. It is impossible to commit attempted Hobbs Act robbery without specifically intending to commit every element of the completed crime, which includes the commission or threat of physical violence. 18 U.S.C. § 1951. Since Hobbs Act robbery is a crime of violence, it follows that the attempt to commit Hobbs Act robbery is a crime of violence.

*United States v. Dominguez*, __ F.3d __, 2020 WL 1684084, at *2 (9th Cir. Apr. 7 2020); *United States v. McCant*, __ F. App'x __, 2020 WL 1157025, at *1 (11th Cir. Mar. 10, 2020) (discussing "*St. Hubert* remains good law"); *United States v. St. Hubert*, 909 F.3d 335, 351-52 (11th Cir. 2018) (holding that attempted Hobbs Act Robbery constituted a crime of violence under Section 924(c)'s use–of–force clause because that clause expressly includes "attempted use of force"); *see also United States v. Adulkader*, No. 1:16-cr-019, 2019 WL 6351257, at **4-5 (S.D. Ohio Nov. 27, 2019) (citing *St. Hubert* with approval and finding that attempted murder is a crime of violence under § 924(c)(3)(A) because "'an attempt to commit a crime should be treated as an attempt to commit every element of the crime'") (quoting *Hill v. United States*, 877 F.3d 717, 719 (7th Cir.

---

[3] *But see United States v. Jones*, 489 F. App'x 57, 62 (6th Cir. 2012) (holding that attempted murder conviction "unquestionably qualifies" as a "crime of violence" under the definition of the latter in U.S.S.G. § 4B1.2(a)(1), which is nearly identical to the § 924(c)(3) definition).

2019)); *United States v. Jefferys*, No. 18-cr-359, 2019 WL 5103822, at *7 (E.D.N.Y. Oct. 11, 2019) (concluding "that attempted Hobbs Act robbery constitutes a crime of violence under § 924(c)'s elements clause" and thus "may sustain a § 924(c) charge.").

Considering these cases and § 924(c)(3)(A)'s definition of crimes of violence as those offenses that require either "the use" or "attempted use" of force, *id*., the court is satisfied that the minimum conduct necessary to commit an attempted Hobbs Act robbery amounts to a crime of violence under the elements clause. Thus, in Wallace's case, his conviction on Count Three remains, notwithstanding the impact of *Davis* on the conspiracy predicate. This claim therefore will be dismissed.

## IV.     Conclusion

The motion and the record here "conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). For these reasons, the movant is not entitled to an evidentiary hearing, and his claims fail. Accordingly, the movant's motion under 28 U.S.C. § 2255 (Doc. No. 1) will be denied, and this action will be dismissed.

## V.      Certificate of Appealability

Rule 11(a) of the Rules Governing Section 2255 Cases requires that a district court "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A certificate of appealability may issue only if the "applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack*

*v. McDaniel*, 529 U.S. 473, 484 (2000)). The court finds that the movant has not satisfied this standard and will therefore deny a certificate of appealability as to both claims raised in Wallace's § 2255 motion.

    An appropriate order will enter.

                                            Aleta A. Trauger
                                            United States District Judge